## ÆTNA LIFE INS. CO. v. KERN–BAUER.
### No. 668.

Circuit Court of Appeals, Tenth Circuit.
Jan. 5, 1933.

S. J. Clay, of Oklahoma City, Okl. (J. S. Ross and Jas. H. Ross, both of Oklahoma City, Okl., on the brief), for appellant.

Theodore Pruett, of Anadarko, Okl. (Pruett & Wamsley, of Anadarko, Okl., and Melton & Melton and Alger Melton, all of Chickasha, Okl., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The jury found that Joe Kern came to his death, "directly and independently of all other causes, from bodily injuries effected solely though external, violent and accidental means." Judgment was rendered on the verdict for the amount of an accident insurance policy issued by appellant, in favor of appellee, the beneficiary. Two questions are argued upon this appeal, one concerning the admissibility of certain statements as spontaneous exclamations, the other as to the sufficiency of the evidence to support the verdict.

Kern, a man 48 years old and apparently in sound health, left the home of a friend in Ponca City about 5:30 or 6:00 o'clock in the evening, saying he was bound for Wichita. Five hours later he was found in his car, off the road, about 50 miles from Ponca City. His car had left the pavement a block or more from where it stopped, had crossed a slight ditch, and had come to rest with the right wheels on the embankment on the far side of the ditch. The motor had been turned off, but the car was not damaged. His whereabouts from the time he left the home of his friend until he was found is not shown by the evidence. Not more than an hour and a half

could well be consumed in the 50-mile drive on the pavement; whether he spent the other 3 or 4 hours in the car, waiting for assistance, or in Ponca City before he started to Wichita, is entirely a matter of conjecture. Two men came to his rescue and started to Wichita with him; about a half hour later, he was seized with violent pains in the region of the heart, and died.

When found, Kern's head and shoulder were hanging on the outside of the car. He was gagging and complaining of being sick at his stomach and of his head or neck hurting him. He bore no visible mark of an injury. One of the men who went to his assistance asked him what was the matter, if he had a drink too many; to which Kern replied that he did not drink, that he was driving the car and the lights blinded him. The other Samaritan testified that Kern said the lights blinded him, but did not fix the time he made the statement. These statements as to the blinding lights are the only evidence in the record as to the cause of his car running off the road, and were admitted over vigorous objection. The defense being that his death resulted from heart disease and not from accident, this testimony is important, and if it was erroneously admitted, a new trial must be had.

No objection was offered to the statements of the insured concerning his physical condition or the pains he was suffering. Such statements are governed by another exception to the hearsay rule. The statements objected to were a narration of a past event, and are hearsay and inadmissible unless they fall within the exception of spontaneous exclamations. While there is much difference of judicial opinion in the application of the rule to the facts, the rule itself is not difficult of statement. Under this exception to the hearsay rule, a narration of a past event is admissible only when it is made under such stress of physical shock or nervous excitement as to preclude the probability that it is the result of deliberation. The rationale of the rule is that where one is suffering from a shock so serious that the reflective faculty is stilled, there is such assurance that spontaneous exclamations are true that it is safe to dispense with the necessity of an oath and the right of cross-examination. Travelers' Insurance Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437; Vicksburg & Meridian R. Co. v. O'Brien, 119 U. S. 99, 7 S. Ct. 118, 30 L. Ed. 299; National Masonic Acc. Ass'n v. Shryock (C. C. A. 8) 73 F. 774; Peirce v. Van Dusen (C. C. A. 6) 78 F. 693; Travelers' Protective

Ass'n v. West (C. C. A. 7) 102 F. 226; Standard Oil Co. v. Johnson (C. C. A. 1) 299 F. 93; Standard Acc. Ins. Co. v. Baker, 145 Okl. 100, 291 P. 962. No useful purpose will be served by undertaking to cite, analyze, classify, or reconcile the myriad of cases dealing with the subject. That has been done by Dean Wigmore in a chapter devoted to the topic. Wigmore on Evidence (2d Ed.) §§ 1745–1757. Some of the cases confound the question with one of agency, i. e., whether the statements are also admissible against the master; others apply the rule to situations where it would seem to be inapplicable. But each case must be ruled on its own facts. The time elapsed since the accident, the distance from it, whether made in response to an inquiry, have an important bearing upon the pivotal question of whether the exclamation was spontaneous or deliberative; but no one test is determinative. One might regain consciousness hours later and miles away, and yet his exclamation be genuinely spontaneous. Ordinarily such exclamations are sua sponte, but conditions might arise where an injured person, at the moment of the crash, spontaneously answers the inquiry, "What's the matter?" It is for the trial court, in the first instance, to determine the fact as to whether the circumstances under which the statement was made were such as to exclude the probability of it being deliberately made; as in other cases, the presumption is that the trial court decided the fact correctly; but as in other cases, if the finding is clearly without support, the ruling must be reversed.

Applying the rule to the case at bar, we are of the opinion that the evidence was inadmissible. The burden is upon the proponent of evidence to show its admissibility. That burden was not carried. If both witnesses were testifying to the same statement, and if it was made as soon as they found him, the record is still silent as to how long a time elapsed, or what transpired, between the time the lights blinded him and his narration of the event. It may have been 3 minutes or 3 hours. We do know that in the interval he ran a block off the pavement, yet stopped his car without damage to it or visible injury to himself, and turned off the ignition. We do know he was able to comprehend a question as to his drinking and give a sensible and exculpatory answer thereto. We do know his spells of pain were recurrent; he was having one when assistance came; then he said he was able to drive his own car to Wichita; half an hour later, he had another seizure which terminated in his death. Upon this record, he may well have been sitting in his car for hours, between spells, reflecting on many things, including an explanation of the accident. The proof leaves the circumstances in the realm of pure conjecture, and that is not enough.

The other assignment of error need not be determined. The trial court correctly charged the jury that they must find that death resulted, directly and independently of all other causes, from bodily injuries effected solely through accidental means; that is, that they must find that Kern accidentally ran off the pavement, and that such accident caused his death. There is evidence from which a jury might find that he accidentally left the road and ran into the embankment; but whether death resulted from this accident or from a heart attack, is a subject concerning which there was much expert testimony. Since we are powerless to do more than grant a new trial, and since that follows from error in the admission of evidence, a discussion of the evidence at the last trial would be a fruitless task.

The judgment is reversed and the cause remanded for a new trial.

Reversed.