[Civ. No. 25699. Second Dist., Div. Two. May 22, 1962.]

VIVIAN WILEY, Plaintiff and Appellant, v. NELLIE M. EASTER, Defendant and Respondent.

Levy, Russell, DeRoy & Geffner and George DeRoy for Plaintiff and Appellant.

John R. Allport and John J. Mattis for Defendant and Respondent.

ASHBURN, J.—This appeal from a judgment for defendant in a personal injury action is now before us on rehearing. It was presented originally upon a clerk's transcript and a partial reporter's transcript; we found substantial error but due to the abbreviated record were not able to determine whether it was prejudicial to the extent of working a miscarriage of justice. Because of a need that the profession recognize and bear in mind the importance of an adequate record on appeal, we now reiterate a portion of what we said in our former opinion on this subject.

"On this partial record defendant stands pretty well convicted of proximate negligence upon her own testimony. But there is an insurmountable obstacle to the declaration of a miscarriage of justice. . . .

"Section 4½, article VI, of the Constitution, provides: 'No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' . . . The constitutional command that an appellate court examine 'the entire cause, including the evidence,'

before declaring a miscarriage of justice, cannot be ignored. This means the entire evidence. The respondent in each case has a right to demand that such an examination be made. . . .

"*Coleman* v. *Farwell*, 206 Cal. 740 [276 P. 335], was an appeal taken upon a bill of exceptions which contained only part of the evidence and so stated. The court having found several rulings to be apparently erroneous, said at pages 741 and 742: 'In order to justify the reversal of the judgment on the ground of erroneous admission or rejection of evidence, the reviewing court must be of the opinion, after an examination of the entire cause, including the evidence, that the error complained of has resulted in a miscarriage of justice. (Const., § 4½, art. VI.) The burden rests upon the party complaining not only to show error but also to show that the error is sufficiently prejudicial to justify a reversal. (2 Cal.Jur., p. 1008, and cases cited.) Confronted with the foregoing stipulation of counsel and the certificate of the trial judge reciting that the bill of exceptions contains only a part of the evidence offered by both the plaintiff and the defendant and since, therefore, the record does not contain all of the evidence, we are unable to fulfill the constitutional requirement and declare that the errors complained of were prejudicial. (See *Foster* v. *Young*, 172 Cal. 317 [156 P. 476].) . . . For aught that appears in the record there may have been evidence of sufficient competency and weight to overcome any detriment caused by the erroneous rulings.' "

Other cases quoted or cited to the same effect are: *C. H. Duell, Inc.* v. *Metro-Goldwyn-Mayer Corp.*, 128 Cal.App. 376, 378 [17 P.2d 781]; *Buckley* v. *Chadwick*, 45 Cal.2d 183, 203 [282 P.2d 12, 289 P.2d 242]; *Etienne* v. *Kendall*, 202 Cal. 251, 257 [259 P. 752]; *Meyer* v. *Lindsley*, 42 Cal.App.2d 698, 700 [109 P.2d 714]; *Santina* v. *General Petroleum Corp.*, 41 Cal.App.2d 74, 76 [106 P.2d 60]; *Rosenthal* v. *Harris Motor Co.*, 118 Cal.App.2d 403, 409 [257 P.2d 1034]; *Pizer* v. *Brown*, 133 Cal.App.2d 367, 373 [283 P.2d 1055]; *Alvak Enterprises* v. *Phillips*, 167 Cal.App.2d 69, 75 [334 P.2d 148, 338 P.2d 582].

We further said: "Many cases are not susceptible of adequate presentation on an abbreviated record. Counsel who would appeal upon a record such as a judgment roll, agreed statement, settled statement or partial reporter's transcript, should take cognizance of the fact that such a record must disclose within its own four corners the fact of prejudice as well

as error. Sometimes this can be done . . . but great care in preparation of such a record should be exercised in order to reap the full fruits of any error disclosed thereby.''

Because of the probability suggested by the partial record that a complete transcript would show that the error hereinafter discussed worked a miscarriage of justice, we granted plaintiff's motion for a rehearing and an augmentation of the record to include the testimony of plaintiff Wiley, Arthur Combs and Police Officer Louis M. Mellott. A supplemental transcript, including that testimony, is now before us and we are able to decide the case on the merits.

On March 26, 1958, at about 5:35 p. m., a Dodge station wagon operated by defendant Nellie Easter collided with a Chevrolet operated by one Arthur Combs. At the time of the accident, plaintiff Wiley was a paying passenger in the Easter vehicle. She, sitting on the right side of the front seat, was looking out the right window and did not see the accident or the immediately attending circumstances. Also riding in the Easter car were Edith Jackson, Trudy Holmes and Joyce Tillus. All of these women (including Mrs. Easter) were engaged in domestic work in San Fernando Valley and defendant from time to time transported the other members of the group from their homes in Los Angeles City to their place of work in the valley and then back to their homes when work was over, collecting from each the sum of two dollars per trip. The accident happened while they were on their way home on the day in question. The collision took place at the intersection of Lankershim Boulevard and Oxnard Street, within the valley. The Easter vehicle was southbound on Lankershim Boulevard in the right hand lane of two southbound lanes. The Combs automobile had been northbound on Lankershim Boulevard and had made a left turn to go westbound on Oxnard Street. The point of impact of the two vehicles was 14 feet east of the west curb of Lankershim and 28 feet south of the north curb of Oxnard.

Plaintiff was injured and sued Mrs. Easter alone; the owner of the Combs vehicle and Combs, as operator, paid to plaintiff the sum of $5,000 in exchange for a Covenant Not to Sue, and Combs is not and was not a party to this lawsuit.

In considering the evidence and the question of prejudice it should be kept in mind that plaintiff herself was not guilty of any negligence; that negligence of Mrs. Easter is not imputable to plaintiff and any such negligence which contributed

proximately to the accident establishes liability in favor of plaintiff, does so even if that negligence was only one of the proximate causes and even though the negligence of Mr. Combs may have concurred with it in proximately bringing about plaintiff's injuries.

The major issue upon this appeal is whether or not it was prejudicial error for the trial court to allow defendant to introduce evidence of a statement made by her to one of the investigating officers at some time after the accident. Appellant objected to the police officer testifying as to this statement "on the grounds that the foundation was insufficient to establish it as part of the res gestae and that it falls under the ordinary hearsay rule."

Officer Welch, one of the investigating officers, upon direct examination by defense counsel, stated that he talked to defendant after the accident "about her explanation of how it occurred." He made notes which were ultimately carried (accurately or otherwise) into a typed police report. The notes were not present at the trial and the witness did not assert that the report was correct nor was he asked whether it would refresh his memory; however, it seems plain from his testimony that he had no independent recollection of the conversation. He was permitted to read from the police report his version of Mrs. Easter's statement as follows: "In substance, she stated that she was driving southbound on Lankershim Boulevard in the second lane of traffic to the right of the double line. 'As I was approaching Oxnard Street, the signal was green. I was traveling about 35 miles an hour so I just continued on. I didn't see the other car until I was just about to the corner, and when I first saw it, the car was making a left turn from northbound to west bound. As soon as I saw the car coming, I tried to swerve to the right and also tried to stop, but he hit the side of my car and then my car went across Oxnard and hit the signal. I think there were some southbound cars in the lane to my left which were going to make a left turn. I don't know how fast the other car was going, but it was pretty fast.' "

The law of this state concerning res gestae was considerably liberalized and to some extent clarified by the decision in *Showalter* v. *Western Pac. R. R. Co.*, 16 Cal.2d 460 [106 P.2d 895]. Mr. Justice Carter, speaking for the court, said in part: "The rule which we deem to be correct was enunciated in the early case of *People* v. *Vernon*, 35 Cal. 49 [95 Am. Dec. 49]—namely, that declarations which are voluntary and

spontaneous and made so near the time of the principle act as to preclude the idea of deliberate design, though not precisely concurrent in point of time therewith, are regarded as contemporaneous and admissible.'' (P. 465.) ▉ ''The test so laid down is whether or not the statement is made under such circumstances of physical shock or nervous excitement as preclude the likelihood of reflection and fabrication.'' (P. 466.) ▉ '' [I]n our opinion the rule to be followed is that where a declaration is made under the immediate influence of the occurrence to which it relates and so near the time of that occurrence as to negative any probability of fabrication, said declaration is admissible. . . . The cases cited hereinabove to the contrary, holding the view that the admissibility of such statements is dependent on proximity of time to the principal event or on the continuation of the occurrence to which they relate, are as a consequence hereby overruled.'' (P. 467.)

▉ And at pages 468-469: ''The basis for this circumstantial probability of trustworthiness is 'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief.' To render them admissible it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it. (Wigmore on Evidence, [2d ed.], § 1750.)

▉ ''The practice in this state heretofore has been to allow the trial court no discretion in determining the admissibility of alleged *res gestae* statements; however, under the view taken herein there is necessarily some element of discretion in the trial court.

''As stated by the court in *Roach* v. *Great Northern Ry. Co.*, 133 Minn. 257, 260 [158 N.W. 232] : 'In passing upon the admissibility of testimony claimed to constitute a part of the *res gestae,* the trial court determines whether unsworn statements are so accredited that they may go to the jury and be weighed and valued by it, and in determining this it considers whether the statements are spontaneous, whether there

was an opportunity of fabrication or a likelihood of it; the lapse of time between the act and the declaration relating to it; the attendant excitement; the mental and physical condition of the declarant, and other circumstances important in determining whether the trustworthiness of the statements is such that they may safely go to the jury.' ''

*Lane* v. *Pacific Greyhound Lines,* 26 Cal.2d 575, 582 [160 P.2d 21], adds to this quotation from *Showalter* the observation that ''[s]tatements falling within that rule are admissible although self-serving.''

Officer Welch could not recall whether the conversation with defendant was at the scene of the accident or at the hospital. His report indicated that the accident occurred at 5 :35 p. m., that the police received the call at 5 :40 and arrived at the scene at 5 :50. They left at 6 :10. It was his recollection that the ambulance was there when he arrived. The officer was asked by the court, ''Well, do your notes point out, indicate who pointed out certain things? Maybe that would refresh your recollection. THE WITNESS: Well, in the statement she didn't point out the impact, so probably she wasn't at the scene. Also, the type of injuries sustained, I would say that she was taken to the hospital fairly immediately after the ambulance got there. I would presume from all this that I did interview her at the hospital. . . . But this is a presumption.'' He had no independent recollection as to whether or not he went to the hospital or how long he stayed if he was there. He made notes of his interviews with both defendant and the plaintiff and that evening he and his partner, Officer Mellott, dictated the Accident Report, starting at 8 p. m. and finishing at 9 :45; each prepared part of it and Mellott alone signed it. The report does not disclose the time or place of the interviews. Officer Welch could not recall whether the conversation with defendant was in the presence of plaintiff, but he did not believe plaintiff and defendant were together at the time; he talked to them individually.

In a further attempt to lay a foundation for the introduction of the statement, Officer Welch was asked what defendant's condition appeared to be when he talked to her. He said, ''She appeared to be injured and slightly in shock, I would say, due to the injuries as people do get as a result of traffic accidents.'' ''THE COURT: Well, she did tell you her version of it? THE WITNESS: Yes. I got a statement regarding the accident. THE COURT: You got the statement by asking the questions and she giving the answers, is that

correct? THE WITNESS: Yes, and from a verbal story of what she told me, partly questions and answers, partly just voluntary.'' Thereupon the court permitted the witness to read from the report as to the statements made to him by the defendant.

Dr. Farinella, who was called to the hospital to care for plaintiff, also treated defendant Easter, who was in the same room, and testified that she then was in acute distress from a severely injured ankle. He gave Mrs. Wiley ''medication for pain,'' and well may have done likewise for Mrs. Easter. Hence, if she was interviewed at the hospital we cannot say that she was still in the stress of nervous excitement. ▋ The burden of proving the admissibility of a declaration claimed to be *res gestae* rests upon the party who offers it.

It is said in *Harris* v. *Hughes* (Mo.App.) 266 S.W.2d 763, 767: ''Emerging as the main element essential to the admission of evidence under the rule is spontaneity. All else is material only in so far as it tends to prove or disprove spontaneity. [Citations.] It is the burden of the party offering such evidence to establish the surrounding conditions which permit the application of the rule.'' To the same effect, see, *Allen* v. *Mack,* 345 Pa. 407 [28 A.2d 783, 785]; *Aetna Life Ins. Co.* v. *Kern-Bauer* (10 Cir.) 62 F.2d 477, 479. An annotation entitled ''Admissibility as res gestae of statements or exclamations relating to cause of, or responsibility for, motor vehicle accidents,'' in 53 A.L.R.2d 1245, says at page 1260: ''It appears well established that one who seeks to introduce evidence of a statement made in connection with a motor vehicle accident on the ground that, under the res gestae or spontaneous exclamation doctrine, the statement is outside the operation of the hearsay rule, has the burden of proving that the statement meets the requirements of res gestae evidence.''

▋ Spontaneity is of the essence of declarations receivable as *res gestae.* The *Showalter* decision, *supra,* emphasizes the necessity of its being ''voluntary and spontaneous'' (p. 465). The above quotation from *Harris* v. *Hughes,* is to the same effect. See also Note in 53 American Law Reports 2d at page 1262.

After the court had ruled the interview admissible and the officer had read from the police report his version of Mrs. Easter's statement, he further testified: ''That is the substance of our conversation. These aren't her direct words, however. Q. You paraphrased them? A. Yes. It is a ques-

tion and answer portion. I don't read the questions, just more or less the answers.''

Undoubtedly there was in the present instance an occurrence startling enough to produce a spontaneous utterance, and the statements clearly related to the accident. But spontaneity has not been shown and Mrs. Easter's statements fail to meet the other requirements set forth in the *Showalter* case, *supra*. We do not know the time, place, or circumstances under which the statements were made. They could have been made within 20 minutes after the accident and at the scene; or, at the hospital, which would have had to be at least 30 minutes after the occurrence, and could have been as much as an hour or more afterwards. Plaintiff's attorney asserted that defendant had said that it was an hour after the collision and defendant's attorney seemed to agree.

Although the amount of time elapsing between the accident and the utterance is not alone the controlling factor, it is an element to be considered. (See *Dolberg* v. *Pacific Electric Ry. Co.*, 126 Cal.App.2d 487, 489 [272 P.2d 527].) Not only is there a failure to show the amount of time which elapsed between the accident and the interview, but we know not what took place in the intervening time. The evidence fails to exclude the possibility of defendant discussing the situation with other persons or to show that the statements were not made after a full opportunity to consider the circumstances of the collision. As stated in 6 Wigmore on Evidence, third edition, section 1749, page 139: ''The utterance, it is commonly said, must be 'spontaneous,' 'natural,' 'impulsive,' 'instinctive,' 'generated by an excited feeling which extends without let or break-down from the moment of the event they illustrate.' ''

A statement resulting from a question and answer interview of a motorist involved in an accident, especially when conducted by a police officer, suggests at once lack of spontaneity and on the contrary points to deliberation upon the facts engendered by an instinct of self-protection against claims of liability, civil or criminal. ''Admissibility of an exclamation regarding the cause of or responsibility for an automobile accident may be affected by a showing that the exclamation was made in response to an inquiry; that it was so made is, although not determinative of the question of admissibility, important as bearing on the pivotal question whether the exclamation was spontaneous or deliberative, since it tends to indicate a lack of spontaneity.'' (53 A.L.R.2d

1278.) "It may be stated that where it is the event speaking through the person and not the person telling about the event, that such declarations are part of the *res gestae* and admissible in evidence." (*People* v. *Perkins*, 8 Cal.2d 502, 514 [66 P.2d 631].)

It is one thing to receive in evidence an answer to the question, "How in the world did it happen, Joe?" (as in *Showalter, supra,* 16 Cal.2d 460, 464), or "being asked where the other car came from" (as in *Lane, supra,* 26 Cal.2d at 579), or "What happened?" (as in *People* v. *Costa,* 40 Cal.2d 160, 168 [252 P.2d 1]), and quite another thing to receive evidence of an interrogation which in itself is calculated to cause the person who answers the questions to pause and think. *Aetna Life Ins. Co.* v. *Kern-Bauer, supra,* 62 F.2d 477, 478: "Under this exception to the hearsay rule, a narration of a past event is admissible only when it is made under such stress of physical shock or nervous excitement as to preclude the probability that it is the result of deliberation. The rationale of the rule is that where one is suffering from a shock so serious that the reflective faculty is stilled, there is such assurance that spontaneous exclamations are true that it is safe to dispense with the necessity of an oath and the right of cross-examination." *Itzkowitz* v. *P. H. Reubel & Co.,* 158 Ark. 454 [250 S.W. 535, 537]: "The statements do not come within the definition thus given, for, if the statements of the driver merely constituted a narrative of a past event, elicited by questions propounded by the officer in investigating the circumstances of the collision, this does not make them a part of the transaction itself but a mere history or narrative of the transaction, given afterwards. The investigation and inquiry of the officer necessarily broke the continuity between the main fact sought to be elicited and the narrative given of it, and we think that, under these circumstances, the evidence cannot be received as a part of the *res gestae*."

Summarizing, it appears that defendant failed to show when or where her statements were made, whether the excitement of the accident had worn off, whether she was under the influence of sedatives at the time, what portions of her statement were volunteered and what were elicited by questions of the officer which were perhaps suggestive, or by questions which required deliberation in answering. Indeed, it does not affirmatively appear that the pertinent part of the report was made by Officer Welch, or that he knows it to have been correct at the time it was made; hence, under section

2047, Code of Civil Procedure,[1] there was no foundation for reading from it. Neither the report nor its content was admissible in evidence because no competent foundation had been laid. It was error to receive it in evidence or, speaking more accurately, an abuse of discretion.

We are now confronted with the question of prejudice, of miscarriage of justice. Respondent says there was no prejudice because Mrs. Easter had previously testified to the same facts. We cannot agree.

A review of Mrs. Easter's testimony, quite vague in places, points to the conclusion that in fact she was negligent and suggests a mistaken verdict. She testified that she and her passengers were talking about academy awards; her car was in the outside lane closest to the curb; she recalled no other southbound cars on Lankershim; the collision occurred within the intersection; she was driving at 30 to 35 miles an hour, no more and no less; the traffic light was green for her and did not change; she did not see the Combs car before colliding with it. "When I saw it, we hit. That is all I remember." At best, she did not see it until it was about five feet away; she put on her power brakes but that did not reduce the speed. "Q. What, if anything, Mrs. Easter, did you do as soon as you caught this flash of the other car? A. As soon as I caught the flash of the other car? Q. Yes. A. Well, if I remember, as soon as I caught the flash of the other car, we had collided and I cut my wheel. Q. Would you say you cut your wheels— which way did you cut them, to the left or to the right? A. To the right. Q. Would you say you cut your wheels at just about the instant the cars came together? A. Yes, I would." Her vehicle continued until it hit a traffic light post and stopped there; it was so badly damaged it was not repaired. Combs' car was traveling as fast or faster than hers and the front of the Combs vehicle struck her front fender. She did not recall any traffic to her right or left and did not recall any eastbound or westbound cars crossing in front of her.

Singularly, she did not testify that she looked to the right

---

[1]Code Civ. Proc., § 2047: "A witness is allowed to refresh his memory respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred, or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the same was correctly stated in the writing. But in such case the writing must be produced, and may be seen by the adverse party, who may, if he choose, cross-examine the witness upon it, and may read it to the jury. So, also, a witness may testify from such a writing, though he retain no recollection of the particular facts, but such evidence must be received with caution."

or left or straight ahead for other cars as she approached the intersection. She was silent about that and was asked no question concerning it. There was no obstruction to the view; so her own testimony leaves her violating one of the cardinal duties of a motorist who approaches an intersection.

Volume 7, California Jurisprudence 2d, section 232, page 12: "Both drivers, before entering an intersection, must look for approaching automobiles. If they do not look, or if having looked do not see that which was plainly visible, they may be charged with negligence." *Freeman* v. *Churchill*, 30 Cal.2d 453, 459 [183 P.2d 4]: "The jury was instructed that both drivers were required to exercise the same care and 'Each was required to maintain a reasonable lookout for other traffic lawfully using the highways, as such lookout would have been maintained by persons of ordinary prudence in their position. Neither of them had the right to assume that the way was clear, if the facts were such that persons of ordinary prudence so situated would not so have assumed,' and plaintiffs assert that thereby the jury were told that a person of ordinary prudence would have kept a lookout; that is, the jury was advised as a matter of law of the duty of a person of ordinary prudence. . . . It should be clear that for a person to meet the test of ordinary care, he must maintain a *reasonable* lookout for traffic *lawfully* on the highway." See also *Huetter* v. *Andrews*, 91 Cal.App.2d 142, 146 [204 P.2d 655]; *O'Brien* v. *Schellberg*, 59 Cal.App.2d 764, 769 [140 P.2d 159]; 6 California Jurisprudence 2d, section 191, page 668.

Mr. Combs testified that he entered the intersection on the green light turning to the west, was in first gear and traveling 6 or 8 or 10 miles an hour at the time of the collision, and that his car was practically stopped when it happened and did stop right there; that the other car veered to the right and hit the light standard. Officer Mellott testified, as did Welch, that the posted speed limit was 35 miles an hour and further said, without objection, that the maximum safe speed at that intersection under prevailing conditions was 25 miles.

The statement of defendant Easter as read by Officer Welch to the jury differed from defendant's testimony in the following important respects. In that testimony she said she did not see the Combs automobile until the two cars hit, or until she saw a flash of it about five feet away. In the statement she said she saw it when she was just about to the corner and it was then making a left turn to the west; as soon as she saw it she tried to swerve to the right and also tried to stop, but

Combs hit the side of her car which went across Oxnard and into the signal. In the statement she looked, she saw, she tried to avoid a collision and Combs ran into her. In her testimony she did not see Combs making the turn, did not see his car until it was right upon her, and inferentially this was because she had not looked. This difference in versions of the accident could well have spelled the presence or absence of negligence on her part. While her testimony was hesitant, punctuated frequently with "I do not remember," this statement as given by the Officer was clear and direct and easily followed by the jury. Emphasis upon it by counsel in argument well may have erased from the minds of the jurors the uncertain and vague testimony given by defendant at the trial. Especially does this seem true in the light of the fact that Combs had paid to plaintiff $5,000 for a covenant not to sue, a fact which the jury had a right to know (*Laurenzi* v. *Vranizan*, 25 Cal.2d 806, 813 [155 P.2d 633] ; *Reeder* v. *Hoag*, 158 Cal.App.2d 41, 43 [321 P.2d 793]), and which they presumably did know; to a layman this would seem like an admission of liability.

After a consideration of the entire cause, including the evidence, we are of the opinion that it is reasonably probable that a result more favorable to plaintiff would have been reached in the absence of the error above discussed. Hence there was a miscarriage of justice. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

Judgment reversed. Attempted appeal from order denying motion for new trial is dismissed.

Fox, P. J., and Herndon, J., concurred.