STATE of Missouri, Respondent,

v.

Lawrence PAYNE, Appellant.

No. 63196.

Supreme Court of Missouri, En Banc.

Aug. 31, 1982.

Rehearing Denied Oct. 12, 1982.

---

**598**

Henry Robertson, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Defendant was convicted of first degree murder and sentenced to life imprisonment. It is that sentence which brings the cause within exclusive appellate jurisdiction of this Court. Art. V, § 3, Mo.Const.

For his assignments of error defendant asserts: (1) discriminatory underrepresentation of blacks in the St. Louis City grand jury selection process; (2) similar discriminatory underrepresentation of women and blacks as grand jury foremen; (3) improper failure of the trial court to excuse for cause a venirewoman who expressed prejudicial attitudes toward crimes involving weapons; (4) improper admission of statements made by defendant subsequent to his arrest.

On the night of Friday, March 21, Calvin Smith went to the Santa Fe Lounge, a tavern located at 5106 Dr. Martin Luther King Drive in St. Louis where he remained until closing. Smith, while apparently on his way home, was accosted by defendant in the driveway of a service station in the 1600 block of North Union, and he was shot by defendant at close range with a sawed-off shotgun and died later that morning in Barnes Hospital.

The evidence of guilt was substantial. While driving home, Mr. and Mrs. Michael Howell, two employees of the Santa Fe Lounge, had observed the victim apparently talking to another man on the service station lot. Immediately after passing the scene they heard a loud "boom". Stopping to investigate, they observed defendant searching the victim's clothing and immediately they drove to a nearby service station to call the police. Returning to the scene, they saw defendant was still searching the victim's body. This evidence was corroborated by two other passing motorists who also saw defendant searching the victim.

After defendant had completed his search, he walked east on Theodosia. When the police arrived, defendant fled and was apprehended after a brief chase when the police fired several shots. Defendant was returned to the service station driveway where he was identified by the witnesses as the man they had seen searching the victim and by the victim as the man who had shot him.

At the police station, defendant was searched and advised his clothes were to be taken as evidence. He was then told to make a phone call and obtain a change of clothes. For this purpose defendant was taken by a police officer to an outer office where a desk phone was available. While phoning, with the police officer in easy earshot, defendant asked his girlfriend, whom he had called, for a change of clothes and then related to her that he had to shoot someone in a dispute over a "crap game."

Defendant's first two points of error concern underrepresentation of blacks and women in the St. Louis City grand jury system and in the selection of grand jury foremen. In connection with this issue a separate hearing was held in which defendant's case was consolidated with a number of others. By stipulation, the evidence adduced at this trial was the same evidence

adduced in *State v. Baker*, 636 S.W.2d 902 which is on appeal to this Court, bears the No. 63244 and was decided August 23, 1982. The decision we reached in *Baker* on the contentions as to the grand jury selection process is controlling and accordingly the contentions are denied as they were in *Baker*.

## II.

Defendant next contends the trial court erred in failing to strike for cause a venirewoman because of her statements concerning her attitudes as to crimes involving weapons.

Venirewoman Earlean Tharp had been the victim of an armed robbery 15 years earlier and a witness to an armed robbery two months before trial. She made the following statement about her experiences.

Mr. Meyer: Let me ask you this, just a general question because of that tough experience, [the armed robbery 15 years before] do you feel that experience would affect your ability to give the defendant a fair trial?

Venireman Tharp: Sure I would.

Mr. Meyer: You would give him a fair trial?

Venireman Tharp: Yes.

Mr. Meyer: And that prior experience you had, where someone pulled a gun on you, wouldn't cause you not to give him a fair trial?

Venireman Tharp: No.

\*　\*　\*　\*　\*　\*

Ms. Leisening: Do you think that the two experiences you have had as a victim of an armed robbery would affect your ability to be a fair and impartial juror?

Venireman Tharp: No.

Ms. Leisening: You don't think that while you listen to the evidence, heard witnesses testify, that you would be remembering and recalling your own experiences?

Venireman Tharp: No.

Ms. Leisening: You could put those aside, put them behind you, and not consider them or refer to them in your mind as you listened to the evidence?

Venireman Tharp: No, I couldn't.

Ms. Leisening: Well I'm not sure what you mean by no you couldn't.

Venireman Tharp: I mean, I could put it behind me, yes, I could put it behind me.

Upon further questioning by the court, Mrs. Tharp stated that she could follow the court's instructions concerning the possible range of punishments.

 It is well established a defendant is entitled to a full panel of qualified jurors before making peremptory strikes and it is reversible error for a trial court to retain a legitimately challenged juror. *State v. Lovell*, 506 S.W.2d 441, 443–44 (Mo. banc 1974). It is equally true, however, that in nonstatutory challenges the trial court's decision in these matters will not be overruled absent a clear abuse of discretion. *State v. Royal*, 610 S.W.2d 946, 950 (Mo. banc 1981).

 Unlike cases cited by defendant, *State v. Lovell, supra* at 443; *State v. Thompson*, 541 S.W.2d 16, 17–18 (Mo.App. 1976), Mrs. Tharp did not equivocate in her answers concerning her ability to give defendant a fair trial. She did not, for example, state that she "would try" to give defendant a fair trial or that she "believed" she could, instead she stated unequivocally she could give defendant a fair trial. Although some of her answers appear inconsistent, we agree with the trial court that this appeared to be the product of confusion concerning the questions.

In *State v. Olinghouse*, 605 S.W.2d 58 (Mo.1980) we examined a similar issue. The venireman admitted great difficulty with the case because it was a murder trial and a close friend had been murdered in 1973. As we stated there, the venireman's answers indicated a feeling against murder, not against the defendant. The question is not whether past experiences can be put out of a venireman's mind, but whether these experiences would prejudice his views and disqualify him as a juror. *Olinghouse, supra* at 70. Mrs. Tharp stated without hesitation she could give defendant a fair trial

and her comments reflect a general feeling against crimes involving weapons and not against the defendant individually. The point is without merit.

## III.

Finally, defendant raises two challenges to the admissibility of evidence concerning his statements made while phoning his girlfriend for the change of clothes. He first contends the statements were the product of custodial interrogation in violation of his constitutional rights as enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and, second, that the admission of testimony concerning the telephone call was a violation of his right to privacy.

■ With regard to the first assertion, it is important to note defendant does not claim a failure by the police to advise him of his so-called "*Miranda* rights" or a violation of his rights to counsel and to remain silent. Instead he argues that in requiring him to make a telephone call, he was subjected to the functional equivalent of express custodial interrogation. The United States Supreme Court has defined this phrase as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 308 (1980).

Defendant relies primarily on *State v. Kelly,* 439 S.W.2d 487 (Mo.1969). In *Kelly,* the defendant was convicted of first degree robbery and he had stolen, among other items, a billfold and certain papers from his victim. After his arrest, defendant was identified by the victim in a police lineup and was subsequently taken to an interrogation room. Present in the interrogation room were the defendant, the victim and an Officer Ronquest. The defendant was again informed of his "*Miranda* rights" and was asked whether he would like to discuss the robbery. He declined to do so, effectively asserting his right to remain silent.

The officer and the victim then started a conversation concerning the details of the crime. During the course of this conversation, the victim would turn to the defendant and ask him questions aimed at revealing his knowledge of the crime. Although it was the victim who asked defendant these questions, they were initially posed by the officer in his conversation with the victim.

Reversing the conviction, we ruled that this procedure constituted custodial interrogation with the officer actively participating in a three-cornered conversation, all after defendant had asserted his right to remain silent. *State v. Kelly, supra* at 489. Such is not the case here. Officer Washington at no time, either directly or indirectly, questioned defendant while phoning his girlfriend. He merely directed defendant to a telephone and remained nearby. Obvious security reasons would require this. Defendant's statement was entirely voluntary and there were no inherently compelling pressures of custodial interrogation which would work to overcome his will. *See, Miranda v. Arizona, supra,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694, 719 (1966). See also, *People v. Gonzales,* 269 Cal.App.2d 586, 75 Cal.Rptr. 267 (1969) (U.S. *cert. denied* 396 U.S. 1044, 90 S.Ct. 691, 24 L.Ed.2d 687). Other cases where the courts have held that questions by friends and relatives do not constitute custodial interrogation include *Edington v. State,* 243 Ark. 10, 418 S.W.2d 637 (1967); *People v. Petker,* 254 Cal.App.2d 652, 62 Cal.Rptr. 215 (1967); *Holston v. State,* 208 So.2d 98 (Fla.1968).

It cannot be said from this evidence that any word or action of the police requires a finding that they should have known that telling him to call for a change of clothes was reasonably likely to cause him to make incriminating statements. *Innis, supra,* 446 U.S. at page 303, 100 S.Ct. at 1690. This contention is denied.

■ Defendant's final assertion is rejected for essentially the same reasons. He argues that admission of the telephone conversation violated his right to privacy se-

cured under the Fifth Amendment relying on broad statements found in *Murphy v. Waterfront Commission,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596–97, 12 L.Ed.2d 678, 681 (1964) and *Tehan v. United States,* 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453, 460 (1966). However, defendant's contention is denied under the principles announced in *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), wherein it is stated "We hold today that no Fourth or Fifth Amendment claim can prevail where, as in this case, there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused." *Couch v. United States,* 409 U.S. at 336, 93 S.Ct. at 619–20, 34 L.Ed.2d 548, 558 (1973).

We have previously discussed the absence of police compulsion during defendant's time in custody; furthermore, it is clear defendant had no legitimate expectation of privacy in the substance of his telephone call, made in an open office with a police officer standing nearby. The final point is ruled against defendant.

Affirmed.

All concur.