[No. B021700. Second Dist., Div. Five. Sept. 22, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE ALFRED HUGHEY, Defendant and Appellant.

COUNSEL

Russell Iungerich, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roy C. Preminger and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—

### STATEMENT OF THE CASE

Appellant Willie Alfred Hughey assaulted his wife and attempted to suffocate his three-month-old daughter with a pillow. After trial by jury, appellant was convicted of assault in violation of Penal Code section 240 and of child endangering in violation of Penal Code section 273, subdivision (a). He appeals from the judgment.

### STATEMENT OF FACTS

On January 19, 1986, Meya Brule, eight years old, was living in a two-bedroom house with her mother, Pamela Thomas; her stepfather, appellant;

her stepbrother, Al; her big sister and a little brother; and her three-month-old baby sister Salamia. That evening, Meya was asleep in the bedroom she shared with all of her siblings. She was awakened by her parents' arguing. She went into the living room and heard her parents fighting. After her mother yelled at her to go back into her room, she returned to her bedroom and talked to her stepbrother Al. Meya left the bedroom again, went into the hall and looked into her parents' bedroom. She saw her parents fighting and arguing. Salamia was on the bed where her mother was sitting. Appellant said to Ms. Thomas: "Don't tell me that baby's mine again or I'll kill you." Appellant then pressed a pillow on the infant's head. The infant cried and her feet kicked. It took Ms. Thomas approximately two minutes before she could wrestle the pillow away from appellant. While Ms. Thomas tried to take the pillow from appellant, appellant hit Ms. Thomas in the breast with his elbow and pushed her backward. Appellant then dragged Ms. Thomas by the neck into the living room, picked her up and she eventually fell over the couch. Meya went back into her bedroom and told Al all she saw. Al called their grandmother, who in turn called the police.

Two Los Angeles police officers arrived shortly thereafter. As they were arriving, appellant threatened Ms. Thomas when he yelled at her, "You're making the biggest mistake of your life. When I get out of [jail] I'm going to kill you . . . ." As the officers exited their vehicle approximately two blocks from the residence, they could hear an adult female. As they approached the house, they heard the woman scream, "Help me." Ms. Thomas came out of the house, crying, with abrasions on her left forearm and her neck. While on the porch, Ms. Thomas told the officers that she had been struck by appellant. She also said that appellant tried to smother the infant. In the residence a few minutes later, the officers asked Ms. Thomas about the events. Ms. Thomas said appellant had repeatedly thrown her against the wall heater, she had struck her head on a bed post, and appellant had stomped her in the stomach. Prior to this incident, Ms. Thomas and appellant had physical fights.

At trial, Ms. Thomas did not testify. The statements she made immediately after the assaults were introduced through one of the investigating officers as spontaneous statements.

### SPONTANEOUS STATEMENTS

Appellant contends that the statements of the victim, Ms. Thomas, were improperly admitted because they were not spontaneous statements and because a proper foundation was not laid prior to their admission. Appellant's assertions lack merit.

A declarant's hearsay statement is admissible as a spontaneous statement if it: "(a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240, subds. (a), (b).) ██ The trustworthiness of the statement is based upon the "startling or exciting nature of the act observed and on the spontaneity of the statement made under the stress of excitement produced by declarant's observation of that act or event." (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 13.1, p. 369.) The proponent of the statement must show that the declarant made the statement spontaneously, while under stress of the excitement, with no time to contrive, and the utterance must relate to the circumstances. (*People* v. *Washington* (1969) 71 Cal.2d 1170, 1176 [81 Cal.Rptr. 5, 459 P.2d 259, 39 A.L.R.3d 541]; *People* v. *Francis* (1982) 129 Cal.App.3d 241, 253-254 [180 Cal.Rptr. 873].) "Spontaneous" does not mean that the statement be made at the time of the incident, but rather in circumstances such that the statement is made without reflection. (*People* v. *Gonzales* (1969) 269 Cal.App.2d 586 [75 Cal.Rptr. 267]; *People* v. *Forgason* (1979) 99 Cal.App.3d 356 [160 Cal.Rptr. 263]; 1 Jefferson, Cal. Evidence Benchbook, *op. cit. supra,* at p. 370.)

██ As the investigating officers approached the residence, they heard an adult female yelling, "Help me." When Ms. Thomas ran out of the house, she was upset, crying and had abrasions on her neck and arm. While on the porch, she told the officers that appellant had struck her and tried to suffocate her baby. In the residence three or four minutes later, Ms. Thomas told the officers that appellant stomped her in the stomach, grabbed her around the neck, repeatedly threw her backwards and hit her breast with his elbow. All statements had the indicia of reliability to qualify as spontaneous statements. The statements described a startling event and were made under the excitement of the event. Ms. Thomas was screaming as the officers arrived, clearly indicating that the few-minute interval between the time of the assaults and the statements did not destroy their spontaneity.

Prior to the admission of these spontaneous statements into evidence, Meya testified that the police came to the house shortly after she saw the assault on her mother and the attempt to suffocate her infant sister. Therefore, a proper foundation was laid for the admission of Ms. Thomas's spontaneous statements.

### RIGHT OF CONFRONTATION/EFFECTIVE COUNSEL

Ms. Thomas was subpoenaed by the prosecution, present in the court, but not called to testify by either party. Her statements were admitted through the testimony of the officer under the spontaneous statement exception to

the hearsay rule. (Evid. Code, § 1240.) ■■■ Although unavailability of the declarant as a witness is not required by Evidence Code section 1240, appellant argues that under the confrontation clauses of the United States and California Constitutions, the victim's spontaneous statement was inadmissible unless the prosecution either (1) called Ms. Thomas to testify as a witness for the prosecution or (2) demonstrated that she was unavailable as a witness. ■■■ Conceding that appellant's trial counsel did not raise this constitutional objection below, appellant argues he was deprived of the effective assistance of counsel.

Appellant's argument is without merit because (1) the failure to object on confrontation grounds may have been a reasonably competent tactical choice of counsel, and hence not grounds for reversal on appeal on the theory of incompetence of counsel and (2) in any event, the confrontation objection is without merit.

Trial counsel may well have believed that the prosecution case would appear weaker to the jury without the live testimony of Ms. Thomas than with it. Since Ms. Thomas was in fact apparently available and in the courtroom, trial counsel must have known that even if he made the confrontation objection and it were sustained, the prosecution could cure the objection by calling Ms. Thomas to testify, in which case the prosecution would have both the spontaneous statement and live testimony. Since the record on appeal does not show why counsel did not raise a confrontation objection after his statutory hearsay objection was overruled, but there could have been a satisfactory explanation or reasonable tactical purpose, incompetence of counsel has not been shown. (*People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

■■■ In any event, we hold that the admission of the victim's spontaneous statements under Evidence Code section 1240 did not violate appellant's right to confront witnesses under the United States or California Constitutions. (U.S. Const., Amend. VI; Cal. Const., art. I, § 15.)

Citing a line of United States Supreme Court decisions involving the hearsay exception for prior testimony of a witness, and culminating in *Ohio* v. *Roberts* (1980) 448 U.S. 56, 65 (65 L.Ed.2d 597, 607, 100 S.Ct. 2531], appellant argues that the confrontation clause prohibits the introduction of hearsay evidence, even under a well-established exception to the hearsay rule, unless the prosecution first shows that use of the hearsay is a "necessity" because the declarant is unavailable as a witness. This argument is erroneous because (1) appellant's interpretation of *Roberts* has been rejected by the United States Supreme Court in *United States* v. *Inadi* (1986) 475 U.S. 387 [89 L.Ed.2d 390, 106 S.Ct. 1121] and (2) the theory for the

spontaneous statement exception to the hearsay rule shows the necessity for such evidence whether or not the declarant is unavailable as a witness.

Appellant quotes the language from *Ohio* v. *Roberts, supra,* 448 U.S. 56, 65 [65 L.Ed.2d 597, 607], and contends that this language[1] means that a showing of necessity due to unavailability of the witness is always required in order to satisfy the confrontation clause. He contends that as applied to the instant case, this means that the prosecution could not use the spontaneous statement to the officer unless the prosecution called Ms. Thomas to testify in the prosecution case or demonstrated that she was legally unavailable as a witness.

Appellant's interpretation of *Ohio* v. *Roberts, supra,* 448 U.S. 56, was rejected in *United States* v. *Inadi, supra,* 475 U.S. 387 [89 L.Ed.2d 390]. The issue in *Inadi* was "whether the Confrontation Clause requires a showing of unavailability as a condition to admission of the out-of-court statements of a nontestifying co-conspirator, when those statements otherwise satisfy the requirements of Federal Rule of Evidence 801(d)(2)(E)." (*United States* v. *Inadi, supra,* 475 U.S. at p. 391 [89 L.Ed.2d at p. 396], fn. omitted.) The court held the federal Constitution did not require a showing of the declarant's unavailability as a prerequisite to admission of the evidence. (*Id.* at p. 400 [89 L.Ed.2d at p. 402.])

*Inadi* states that the quoted language in *Ohio* v. *Roberts, supra,* 448 U.S. 56, *does not* "stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable," a proposition which the court viewed as tantamount to "a wholesale revision of the law of evidence." (*United States* v. *Inadi, supra,* 475 U.S. at pp. 394, 392 [89 L.Ed.2d at pp. 398, 396].) In its

---

[1] "The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. See *Mancusi* v. *Stubbs,* 408 U.S. 204 (1972); *Barber* v. *Page,* 390 U.S. 719 (1968). See also *Motes* v. *United States,* 178 U.S. 458 (1900); *California* v. *Green,* 399 U.S., at 161-162, 165, 167, n. 16. [¶] The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" (Fn. omitted.)

Even this broad statement in *Ohio* v. *Roberts, supra,* however, contained a footnote which read: "A demonstration of unavailability, however, is not always required. In *Dutton* v. *Evans,* 400 U.S. 74 (1970), for example, the Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness. Cf. Read, The New Confrontation—Hearsay Dilemma, 45 S. Cal. L. Rev. 1, 43, 49 (1972); The Supreme Court, 1970 Term, 85 Harv. L. Rev. 3, 194-195, 197-198 (1971)." (448 U.S. at p. 65, fn. 7 [65 L.Ed.2d. 597, 607].)

series of decisions on the confrontation clause, the court has repeatedly declined to adopt a single theory which would determine the validity of all hearsay exceptions. (*Id.* at p. 392, [89 L.Ed.2d at p. 397].) The statements in *Roberts* must be considered, said the court, in light of the particular hearsay exception involved, the exception for testimony in a prior judicial proceeding. (*Ibid.*)

The court distinguished the prior testimony exception from the coconspirator exception. We set out at some length the Supreme Court's language because the court's reasoning is very instructive in resolving the instant case. The court stated: "There are good reasons why the unavailability rule, developed in cases involving former testimony, is not applicable to co-conspirators' out-of-court statements. Unlike some other exceptions to the hearsay rules, or the exemption from the hearsay definition involved in this case, former testimony often is only a weaker substitute for live testimony. It seldom has independent evidentiary significance of its own, but is intended to replace live testimony. If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version. When two versions of the same evidence are available, longstanding principles of the law of hearsay, applicable as well to Confrontation Clause analysis, favor the better evidence. See Graham, The Right of Confrontation and the Hearsay Rule: Sir Walter Raleigh Loses Another One, 8 Crim. L. Bull. 99, 143 (1972). But if the declarant is unavailable, no 'better' version of the evidence exists, and the former testimony may be admitted as a substitute for live testimony on the same point. [¶] Those same principles do not apply to co-conspirator statements. Because they are made while the conspiracy is in progress, such statements provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court. When the Government—as here—offers the statement of one drug dealer to another in furtherance of an illegal conspiracy, the statement often will derive its significance from the circumstances in which it was made. Conspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand. Even when the declarant takes the stand, his in-court testimony seldom will reproduce a significant portion of the evidentiary value of his statements during the course of the conspiracy. [¶] In addition, the relative positions of the parties will have changed substantially between the time of the statements and the trial. The declarant and the defendant will have changed from partners in an illegal conspiracy to suspects or defendants in a criminal trial, each with information potentially damaging to the other. The declarant himself may be facing indictment or trial, in which case he has little incentive to aid the prosecution, and yet will be equally wary of

coming to the aid of his former partners in crime. In that situation, it is is extremely unlikely that in-court testimony will recapture the evidentiary significance of statements made when the conspiracy was operating in full force. [¶] These points distinguish co-conspirators' statements from the statements involved in Roberts and our other prior testimony cases. Those cases rested in part on the strong similarities between the prior judicial proceedings and the trial. No such strong similarities exist between co-conspirator statements and live testimony at trial. To the contrary, co-conspirator statements derive much of their value from the fact that they are made in a context very different from trial, and therefore are usually irreplaceable as substantive evidence. Under these circumstances, 'only clear folly would dictate an across the board policy of doing without' such statements. Advisory Committee's Introductory Note on the Hearsay Problem, quoted in Westen, The Future of Confrontation, 77 Mich L Rev 1185, 1193 (1979). The admission of co-conspirators' declarations into evidence thus actually furthers the 'Confrontation Clause's very mission' which is to 'advance "the accuracy of the truth-determining process in criminal trials."' *Tennessee* v. *Street,* 471 US 409, 415, 85 L Ed 2d 425, 105 S Ct 2078 (1985), quoting Dutton v. Evans, 400 US 74, 89, 27 L Ed 2d 213, 91 S Ct 210 (1970)." (*United States* v. *Inadi, supra,* 475 U.S. at pp. 395-396 [89 L.Ed.2d at pp. 398-399].)

The reasoning of the United States Supreme Court about the special value of evidence under the coconspirator exception to the hearsay rule is even more strongly applicable to the spontaneous statement exception involved in this case. The opinion in *Inadi* closely follows Wigmore's reasoning about the necessity and value of spontaneous statement evidence, not dependent on whether the declarant is unavailable.

The theory of the spontaneous statement exception to the hearsay rule is that since the statement is made spontaneously, while under the stress of excitement and with no opportunity to contrive or reflect, it is *particularly* likely to be truthful. As explained by Wigmore, this type of out-of-court statement, because of its "superior" trustworthiness, is *"better than* is likely to be obtained from the same person upon the stand . . . ." (6 Wigmore, Evidence (Chadbourn ed. 1976) § 1748, p. 199, italics added.) Unlike other hearsay exceptions in which the unavailability of a witness makes it "necessary" to resort to hearsay as a weaker substitute for live testimony (5 Wigmore, Evidence (Chadbourn ed. 1974) § 1420, p. 251), the spontaneous statement exception involves a "necessity" of a different sort: "[T]hat we cannot expect, again, or at this time, to get *evidence of the same value* from the same or other sources" (*id.* at § 1421, p. 253, italics in original) and "[t]he extrajudicial assertion being better than is likely to be obtained from the same person upon the stand, a necessity or expediency arises for resort-

ing to it." (6 Wigmore, Evidence, *op. cit. supra,* § 1748, p. 199.) This is why unavailability of the declarant as a witness need never be shown under this exception. (*Ibid.*; 6 Cal. Law Revision Com. Rep. (1964) appen. pp. 465-466. See also *People* v. *Brust* (1957) 47 Cal.2d 776, 785 [306 P.2d 480].)

Here, as in *United States* v. *Inadi, supra,* 475 U.S. at pages 395-396 [89 L.Ed.2d at pages 398, 399, 106 S.Ct. 1121, 1126, 1127], the victim's spontaneous statements are not a "weaker substitute for live testimony" but a valuable form of evidence "that cannot be replicated, even if the declarant testifies to the same matters in court," and are therefore "usually irreplaceable as substantive evidence, and of great value in furthering the purpose of the confrontation clause to 'advance the "accuracy of the truth-determining process in criminal trials." ' "[2]

Appellant cannot realistically claim he was denied the right to confront witnesses in this case. Ms. Thomas was in the courtroom under prosecution subpoena. Had he thought it would help him, or if he so desired, appellant could have confronted and cross-examined her under Evidence Code section 1203.[3] According to appellant's reasoning, if Ms. Thomas had been dead or beyond the jurisdiction of the court and thus actually unavailable for cross-examination, appellant's constitutional right to confrontation would *not* be violated, but because she was there in the courtroom available for appellant to confront pursuant to Evidence Code section 1203, his constitutional right to confrontation *was* violated. The United States Constitution does not require such an anomaly. (See *California* v. *Green* (1970) 399 U.S. 149, 165 [26 L.Ed.2d 489, 501, 90 S.Ct. 1930].)

Appellant's argument that the prosecution had to call Ms. Thomas as its witness was also rejected in *United States* v. *Inadi, supra,* 475 U.S. 387 [89 L.Ed.2d 390]. The dissenting opinion of two justices argued that the confrontation clause required the prosecution to put the declarant on the stand as part of the prosecution's case. (*Id.* at pp. 407-411 [89 L.Ed.2d at pp. 406-409].) The majority, however, citing a federal rule of evidence analogous to California Evidence Code section 1203, said that the defendant himself could have subpoenaed and called the witness to the stand for cross-exami-

---

[2] Three California cases have rejected challenges to Evidence Code section 1240 on confrontation grounds. Appellant correctly points out that in each of those cases the declarant was, as a matter of fact, unavailable as a witness. (*People* v. *Jones* (1984) 155 Cal.App.3d 653, 661-664 [202 Cal.Rptr. 289] [declarant dead]; *In re Damon H.* (1985) 165 Cal.App.3d 471, 474-479 [211 Cal.Rptr. 623] [declarant too young to qualify as a competent witness]; *People* v. *Orduno* (1978) 80 Cal.App.3d 738, 742, 746-748 [145 Cal.Rptr. 806] [same].) For the reasons discussed, we conclude that fact was not essential to the constitutional analysis.

[3] Evidence Code section 1203, subdivision (a), provides: "The declarant of a statement that is admitted as hearsay evidence may be called and examined by any adverse party as if under cross-examination concerning the statement."

nation. "If the Government has no desire to call a co-conspirator declarant as a witness," the confrontation clause does not require it to do so. (*Id.* at p. 398 [89 L.Ed.2d at p. 400].)[4]

In this case the police were fortunate to arrive at the scene at the same time the events were occurring, and the victim described the crime under circumstances qualifying for the spontaneous statement exception to the hearsay rule, which courts and commentators have recognized as a highly trustworthy, valuable and irreplaceable form of evidence. For whatever reasons, the prosecution decided to rely on that and other eyewitness evidence, and not to call Ms. Thomas as a live witness. The prosecution, nevertheless, subpoenaed her to court and she was in the courtroom apparently available for appellant to confront and cross-examine if he chose to do so. Appellant cites no persuasive authority or evidence that he was deprived of his right to confront witnesses against him. Appellant expresses concern that the pattern of evidence in this case could become a widespread practice which would change the usual pattern in criminal trials, but this concern is not well-founded. Usually the prosecution will want to call the victim as its witness. Furthermore, we doubt that it is commonplace for all the requirements of the spontaneous statement exception to occur. In any event, under the circumstances of this case, appellant's constitutional right to confrontation was not violated.

## SUBSTANTIAL EVIDENCE

■ Appellant alleges that there was no substantial evidence to support the verdict. Appellant's allegation lacks merit.

A spontaneous statement can prove that the startling event occurred. (*People* v. *Butler* (1967) 249 Cal.App.2d 799 [57 Cal.Rptr. 798]; *People* v. *Worthington* (1974) 38 Cal.App.3d 359 [113 Cal.Rptr. 322]; 1 Jefferson, Cal. Evidence Benchbook, *op. cit. supra*, § 13.1, pp. 372-373.) Therefore, when Ms. Thomas told the investigating officer that appellant struck her, tried to smother the baby, grabbed her repeatedly, threw her against the wall heater and elbowed her in the breast, these comments, properly admitted as spontaneous statements, supported the assault and the child endangering convictions.

In addition, Ms. Thomas's statements were fully corroborated by other evidence. The investigating officer heard Ms. Thomas screaming, "Help

---

[4] Appellant here was in an even better position than the defendant in *Inadi*. Here the declarant was actually present in the courtroom if appellant desired to call her. In *Inadi*, the declarant had not shown up at trial and the court did not require the prosecution to make any further effort to make the declarant " 'available.' " (*United States* v. *Inadi, supra*, 475 U.S. at p. 398 [89 L.Ed.2d at p. 400].)

me," and he observed abrasions on her arm and neck. Meya testified that she heard her parents arguing, saw her mother and sister on the bed, saw her stepfather drag her mother into the living room, and her mother fall over the couch. Meya first denied seeing her stepfather press the pillow to her sister's head and she denied hearing her stepfather threaten her mother. However, after a recess, she testified that she saw her stepfather press a pillow to her sister's head while the child was crying and her feet were kicking. She also stated that she heard her stepfather say, "Don't tell me that baby's mine or I'll kill you," and she heard her stepfather say, "You are making the biggest mistake of your life. When I get out of [jail] I'm going to kill you." Meya then explained that she had lied in her earlier testimony because she had been told to lie. The small inconsistencies in Meya's testimony, especially when logically and fully explained, do not, as appellant suggests, result in insubstantial evidence. Rather, the jury's conclusions that appellant assaulted Ms. Thomas and tried to suffocate the infant are fully supported by the evidence.[5]

## CLOSING ARGUMENT

Appellant contends that the prosecutor committed misconduct in closing argument. He asserts that the prosecutor improperly argued that the defense could have called the victim, Ms. Thomas, to the stand; that the prosecutor improperly commented on facts outside the record; and that he improperly appealed to the passions of the jury.[6] The prosecutor's actions do not warrant reversal.

In appellant's closing statement, he argued that Meya's testimony was unreliable and not to be believed. In response, the prosecutor commented upon appellant's failure to call Ms. Thomas as a witness. He stated: ". . . If in fact it really happened the way [appellant] want[s] you to think, . . . [d]on't you think [Ms. Thomas] would have gotten up for this man and said, 'Hey, didn't happen that way.?'" This was proper argument because the state may comment on the defendant's failure to call logical witnesses, even if that witness is his wife. (Evid. Code, §§ 412, 413; *People* v. *Coleman* (1969) 71 Cal.2d 1159, 1167 [80 Cal.Rptr. 920, 459 P.2d 248]; *People* v. *Vargas* (1973) 9 Cal.3d 470, 475 [108 Cal.Rptr. 15, 509 P.2d 959] ; Witkin, Cal. Criminal Procedure (1963) Trial, § 447, pp. 450, 451.) However, in making this argument the prosecutor improperly went outside the record when he pointed to Ms. Thomas in the courtroom and stated that the

---

[5] Appellant's only witness was Meya's brother, Al, who stated that Meya never left the bedroom that night. This testimony is questionable at best. If Al's statements were believed, it would not explain why he would have called his grandmother with information that his parents were fighting.

[6] Without citation to authority, appellant's suggestion that he was entitled to surrebuttal lacks merit.

reason she did not testify was because she had changed her mind. This comment explained to the jury why neither party had called Ms. Thomas to the stand. The comment, however, would not have been prejudicial to appellant[7] because the prosecutor was conceding that Ms. Thomas's testimony would have been favorable to appellant. Further, any possible prejudicial implication drawn from the comments was sufficiently dissipated by the court's comments and instruction to the jury.[8] *People* v. *Baker* (1974) 39 Cal.App.3d 550, 555 [113 Cal.Rptr. 248].)

▮▮▮ Appellant also suggests that the prosecutor improperly appealed to the passions of the jury when he rhetorically asked: ". . . You want this case a few months from now and the next time somebody is dead? . . ." "A prosecutor may vigorously urge his points as long as he does not act unfairly." (*People* v. *Rodriguez* (1970) 10 Cal.App.3d 18, 36 [88 Cal.Rptr. 789].) Suggesting that a defendant will commit a criminal act in the future is not an inappropriate comment when there is sufficient evidence in the record to support the statement. (*People* v. *Baker, supra,* 39 Cal.App.3d at p. 555.) Appellant threatened the victim twice when he said, "Don't tell me that baby's mine or I'll kill you," and "[y]ou're making the biggest mistake of your life. When I get out of [jail] I'm going to kill you . . . ." Ms. Thomas and appellant had physical fights previously. When appellant tried to suffocate the infant, the escalation of their fighting almost resulted in their infant's death. Therefore, when the prosecutor suggested that future events may occur, his comments were reasonable inferences from the facts and proper argument.

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 23, 1987.

---

[7] Appellant's citation to *People* v. *Smith* (1898) 121 Cal. 355, 361, 362 [53 P. 802], and *People* v. *Mendoza* (1974) 37 Cal.App.3d 717 [112 Cal.Rptr. 565], are not controlling. In both cases the courts found prejudicial prosecutorial misconduct when the prosecutors in conjunction with other inappropriate remarks made incorrect statements of law. Here, the prosecutor did not present incorrect statements of law to the jury.

[8] The jury was told that statements made by the attorneys were not evidence. Further, the jury was instructed with CALJIC No. 1.02 (1979 rev.), which provides in pertinent part that "[s]tatements made by the attorneys during the trial are not evidence . . . ."