[No. B049540. Second Dist., Div. Seven. Apr. 9, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY O., Defendant and Appellant.

COUNSEL

Dorothy J. Kray, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Peggy S. Ruffra and Carolyn D. Fuson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOODS (Fred), J.**—Appellant challenges the admissibility and sufficiency of hearsay evidence identifying him as the person who fired two shotgun rounds at four victims. We conclude the evidence was both admissible and sufficient. We affirm the order sustaining the petition.

### PROCEDURAL AND FACTUAL BACKGROUND

A petition alleged appellant, a minor, attempted to murder four victims while personally using a shotgun (Welf. & Inst. Code, § 602; Pen. Code, §§ 664/187, 12022.5) and inflicted great bodily injury upon one of the victims (Pen. Code, § 12022.7).

A fitness hearing was held and the court determined the minor was a "proper subject to be dealt with under the juvenile court law." (Welf. & Inst. Code, § 707, subds. (a), (b), (c).)

Petitioner denied the allegations and an adjudication hearing (a trial) was held.

We synopsize the evidence, and do so with a perspective favoring the appealed-from superior court order (*People* v. *Barnes* (1986) 42 Cal.3d 284,

303-304 [228 Cal.Rptr. 228, 721 P.2d 110]). We reserve elaboration of the challenged identification evidence for the discussion portion of our opinion.

On Thursday evening, January 25, 1990, 26-year-old Brenda Holquin was driving in the Lincoln Heights area of Los Angeles, an area she had lived in all her life. She knew there were three gangs in the area (Eastlake, Clover, and El Sereno) had belonged to one of them when younger, and had friends in all three.

Sometime before 8 p.m. she saw a friend's younger brother, Arthur, and stopped to pick him up because "[e]arlier in the day . . . he had . . . gotten shot at from another gang." Arthur and three of his friends all got in Brenda's car, Arthur in the front passenger seat, Jaime in the rear left (behind the driver), and Alejandro in the middle rear.[1]

Brenda drove to Lincoln Heights playground where she expected to find Arthur's mother. Not finding her there, Brenda continued driving, planning to drop Arthur and his friends off someplace else.

Soon, Brenda or one of the young men noticed they were being followed by a black "Mazda R[X]7." At first the young men thought the occupants of the black Mazda might be friends of theirs, so they told Brenda to slow down. Before long they changed their mind and told Brenda to "take off." Brenda made turns and the Mazda made the same turns. She increased her speed, tried to get away, and was scared. The Mazda continued chasing them.

As Brenda testified, "the kids were screaming in the back and telling me don't let them get up on the side of you. And I just kept on driving. And I came up against a red light, and I didn't want to take the red light in lieu of [*sic*] we might have [had] an accident. And as I stopped Art [ ] yelled out, 'He's got a gun.' "

She continued: "I heard two loud noises as we took off. My tires must have spinned because I stayed like in the same position. And they hit the side window and the back window. The glass shattered on my head, and I put my hand on the horn because I knew that there [were] cops down the street—officers down the street on Eastlake because we had passed by them. . . . And when I turned around and look at Art, I panicked because he just said, 'I'm hit, Brenda. I'm hit.' And there was blood all over the place."

Brenda drove two blocks and stopped at a McDonald's. A police car was right behind them. Almost immediately, Arthur, Jaime, and Alejandro each

---

[1]The fourth young man, who apparently sat in the right rear passenger seat, did not testify and was not identified.

told the officers that the person who shot them was "Sharky from El Sereno," appellant.

Brenda saw no faces and made no identification. Arthur did not testify. Jaime and Alejandro recanted their identifications.

The defense, including appellant's testimony, was alibi.

### DISCUSSION

1. *Appellant contends the trial court erred in admitting Arthur's extrajudicial excited utterance.*

One of the officers whom Brenda passed immediately before the shooting was Officer Haddock. He testified that he and his partner had been stopped at Thomas and North Broadway when he heard a loud blast, looked in the direction of the blast, saw Brenda's car, and pulled behind it. The right front passenger, Arthur, immediately exited. "Blood was spewing from his face. I thought he suffered a major wound." From the time of the blast to Arthur exiting the car was "a matter of seconds."

When Arthur exited, Officer Haddock testified, he stated: " 'I just been shot. You got the wrong car. It was Sharky from El Sereno.' "

Officer Haddock, who had had prior contacts with appellant, knew appellant's El Sereno street-gang name was "Sharky."

The trial court admitted Arthur's extrajudicial statement pursuant to Evidence Code section 1240. It provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

Appellant contends the trial court erred in admitting the statement. First, appellant argues, there was an insufficient foundation Arthur *perceived* the event described by his statement, namely, that he *saw* appellant shoot him.

The foundation, or preliminary fact, required only proof by a preponderance of the evidence. (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 966 [127 Cal.Rptr. 135, 544 P.2d 1335].) In making its factual determination the trial court exercises discretion. (*People* v. *Poggi* (1988) 45 Cal.3d 306,

318-319 [246 Cal.Rptr. 886, 753 P.2d 1082].) If substantial evidence supports the exercise of that discretion we must uphold it. (*People* v. *Orduno* (1978) 80 Cal.App.3d 738, 746 [145 Cal.Rptr. 806].)

■ We conclude there is substantial evidence Arthur perceived the event, i.e., that he saw the shooter.

Having been shot at earlier that same day by a rival gang member, Arthur had special reason to be watchful. Before the shooting, he and his friends must have been looking at the occupants of the black Mazda because they determined—and told Brenda—that those occupants were *not* friends. That Arthur was looking at the Mazda when Brenda stopped at the red light is evidenced by Brenda's testimony: "And as I stopped, Art[ ] yelled out 'He's got a gun.'" This evidence was corroborated by the location of Arthur's wounds, namely to his mouth and face, wounds he could have received only by looking at the shotgun when it was fired. Appellant's argument is not well taken.

■ Appellant next contends the court erred in admitting the statement because it failed to make "factual findings." We disagree. Appellant cites no authority for the proposition, and we are aware of none, that a trial court, when making routine in-trial evidentiary rulings, has a duty to make express "factual findings."

■ Appellant further contends it was error to admit the statement because its "reliability" was not established by a preponderance of the evidence. Appellant itemizes the following claimed deficiencies: the seriousness of Arthur's injuries was not shown; there was no evidence of Arthur's mental state and ability to observe; there was no evidence of the lighting conditions; the time lapse from shooting to "excited utterance" was uncertain; and doubt was cast on Arthur's ability to observe because, after the shooting, he covered his face with his hands.

We find this contention unsupported by the evidence and without merit. An excited utterance declarant need not suffer *any* injury, let alone a serious one. Only an "exciting," not injurious, event is necessary. Certainly two close-range shotgun blasts which caused blood to "spew" from the face of the declarant qualify as an "exciting event." Nor was there any evidence suggesting Arthur was not a normal teenager with unimpaired ability to observe. The sufficiency of the lighting conditions was demonstrated not only by the content of Arthur's statements but also by the details Brenda observed (long-haired people leaning out the Mazda window), hostile witness Jaime observed (the black Mazda RX-7), and Alejandro observed (that

the occupants of the Mazda were *not* friends). Officer Haddock testified it was "a matter of seconds" after the shotgun blasts that Arthur made his excited utterance. There was no "uncertain" time lapse. Finally, that Arthur covered his face with his hands *after* he was shot, corroborated, rather than cast doubt upon, the reliability of his statement.

■■ Additionally, appellant contends Arthur's statement "was not independently admissible for truth" and was inadmissible "without independent corroboration." Only *People* v. *Farmer* (1989) 47 Cal.3d 888, 905 [254 Cal.Rptr. 508, 765 P.2d 940] is cited as supporting authority. *Farmer* does *not* support this contention.

■ Contrary to appellant's contention and assumptions, an extrajudicial statement is hearsay evidence only when it "*is* offered to prove the truth of the matter stated." (Evid. Code, § 1200.) If not so offered, the statement is not hearsay and any exception to the hearsay rule, such as an excited utterance (Evid. Code, § 1240), is irrelevant. ■ Nor does admissibility require "corroboration." (*Ibid.*)

■ Finally, appellant asserts that because Arthur was not a witness, special reliability requirements applied to his statement. (*Ohio* v. *Roberts* (1980) 448 U.S. 56, 66 [65 L.Ed.2d 597, 608, 100 S.Ct. 2531].) We agree these requirements were applicable but disagree they were not satisfied. (*People* v. *Jones* (1984) 155 Cal.App.3d 653, 662-665 [202 Cal.Rptr. 289]; *In re Damon H.* (1985) 165 Cal.App.3d 471, 477-479 [211 Cal.Rptr. 623]; *People* v. *Hughey* (1987) 194 Cal.App.3d 1383, 1388-1390 [240 Cal.Rptr. 269]; *People* v. *Gallego* (1990) 52 Cal.3d 115, 176 [276 Cal.Rptr. 679, 802 P.2d 169].)

Before considering appellant's objections to other admitted evidence, we believe it useful to clarify how the law regards an excited utterance, such as Arthur's.

As *Showalter* definitively explained: "These declarations are admissible not because they fall without the hearsay rule, as is the case with 'verbal acts', but because they fall within an exception to that rule. The foundation for this exception is that if the declarations are made under the immediate influence of the occurrence to which they relate, they are deemed sufficiently trustworthy to be presented to the jury. [Citation.]

■ "The basis for this circumstantial probability of trustworthiness is 'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression

of one's actual impressions and belief'. To render them admissible it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it." (*Showalter* v. *Western Pacific R.R. Co.* (1940) 16 Cal.2d 460, 468 [106 P.2d 895].)

Evidence Code section 1240 codifies this rule. (1 Witkin, Cal. Evidence (3d ed. 1986) § 715, p. 698.)

■ Unlike some other hearsay exceptions (e.g., Evid. Code, § 1230, declarations against interest), admissibility does *not* depend upon declarant unavailability. A statement qualifying as an excited utterance is admissible irrespective of declarant availability. (*People* v. *Jones, supra,* 155 Cal.App.3d 653 [declarant, the murder victim, was unavailable]; *People* v. *Hughey, supra,* 194 Cal.App.3d 1383 [declarant, defendant's wife, who was present during the trial but did not testify, was available].) Neither contemporaneity (*People* v. *Jones, supra,* 155 Cal.App.3d 653 [30-40 minute delay]) nor spontaneity (*People* v. *Farmer, supra,* 47 Cal.3d 888 [victim-declarant answered police dispatcher's questions]) is required. Nor need the declarant be identified. (*People* v. *Provencio* (1989) 210 Cal.App.3d 290 [258 Cal.Rptr. 330] [some unidentified kids yelled, "Hey, there goes Angel"; defendant's first name was Angel].) And unlike an accomplice-*witness*, an accomplice-*declarant* requires no corroboration. (*People* v. *Sully* (1991) 53 Cal.3d 1195, 1229-1230 [283 Cal.Rptr. 144, 812 P.2d 163].) Also unlike a witness, an excited-utterance *declarant* need not satisfy witness qualifications. (Evid. Code, § 701; *People* v. *Orduno, supra,* 80 Cal.App.3d 738 [three-year-old victim-declarant found not competent as preliminary hearing witness; her excited utterance admitted at trial]; *In re Damon H., supra,* 165 Cal.App.3d 471 [excited utterance by two-year-nine-month-old victim admitted].) An excited utterance, alone, may support a conviction. (*People* v. *Poggi, supra,* 45 Cal.3d 306, 326; *People* v. *Farmer, supra,* 47 Cal.3d 888, 924; *People* v. *Hughey, supra,* 194 Cal.App.3d 1383, 1394.) Finally, an excited utterance is "*particularly* likely to be truthful" and "because of its 'superior' trustworthiness, is '*better than* is likely to be obtained from the same person upon the stand. . . .' " (*People* v. *Hughey, supra,* 194 Cal.App.3d at p. 1392. Original italics.)

2. *Appellant contends the trial court erred in admitting Jaime's and Alejandro's extrajudicial identifications.*

After Jaime testified he never saw the shooter and never told the police he had, Officers Haddock and Eagleson each testified to Jaime's prior inconsistent statement (Evid. Code, § 1235.[2])

After similar testimony by Alejandro, his prior inconsistent statement, also identifying appellant as the shooter, was testified to by both Officers Haddock and Eagleson. Officer Eagleson testified he showed six photographs to Jaime and Alejandro, each identified appellant, and each signed an identification report.

Distilled, appellant's contention is not that the prior-inconsistent-identification statements of Jaime and Alejandro were inadmissible but, rather, that they were *insufficient* for "conviction." Appellant is mistaken for two reasons.

First, although a repudiated extrajudicial identification cannot, alone, sustain a conviction (*People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865]), one such identification *may* corroborate another, and together support a conviction. (*People* v. *Lucky* (1988) 45 Cal.3d 259, 288-289 [247 Cal.Rptr. 1, 753 P.2d 1052]; *People* v. *Armijo* (1990) 221 Cal.App.3d 271, 277-279 [270 Cal.Rptr. 496].)

Second, contrary to appellant's claim, there was evidence independent of the Jaime-Alejandro extrajudicial statements which inculpated appellant. Arthur's excited utterance not only corroborated the Jaime-Alejandro statements but constituted independent and sufficient evidence of guilt. (*People* v. *Poggi, supra,* 45 Cal.3d 306, 326; *People* v. *Farmer, supra,* 47 Cal.3d 888, 924; *People* v. *Hughey, supra,* 194 Cal.App.3d 1383, 1394.)

---

[2]The section provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Evidence Code section 770 provides: "Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: [¶] (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or [¶] (b) The witness has not been excused from giving further testimony in the action."

## DISPOSITION

The order sustaining the petition is affirmed.

Lillie, P. J., and Johnson, J., concurred.