Filed 4/30/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B302236 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA065662) |
| v. | |
| DONTRAE GRAY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Renee F. Korn, Judge.  Affirmed.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

On video recorded by a bodycam worn by a police officer, a visibly distraught woman reported that her boyfriend had beat her up.  Although her statement qualifies as an "excited utterance" admissible under the hearsay rule, it is inadmissible *at trial* under the Sixth Amendment's Confrontation Clause (Confrontation Clause or Clause), as construed in *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), if she is unavailable as a witness.  But is it inadmissible *at a probation violation hearing* alleging the same assault if she is still unavailable as a witness?  The right to cross-examination at a probation violation hearing is governed—not by the Confrontation Clause—but by due process.  (*People v. Vickers* (1972) 8 Cal.3d 451, 458 (*Vickers*); *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 786 (*Gagnon*).)  Does the admissibility of the bodycam video under the excited utterance exception satisfy the minimum requirements of due process applicable at probation violation hearings?  The courts are split: *People v. Stanphill* (2009) 170 Cal.App.4th 61, 78 (*Stanphill*) says "yes," while *People v. Liggins* (2020) 53 Cal.App.5th 55, 66 (*Liggins*) says "no."  We side with *Stanphill*.  Due process is about reliability; the Confrontation Clause, confrontation.  Because the bodycam video is reliable enough to fall within the firmly rooted hearsay exception for excited utterances, the dictates of due process are satisfied.  We accordingly affirm the judgment finding a probation violation in this case.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

In September 2015, Dontrae Gray (defendant) pled no contest to a single count of assault with a deadly weapon (Pen.

Code, § 245, subd. (a)(1))[1] and admitted that he personally inflicted great bodily injury (§ 12022.7, subd. (a)). The trial court imposed a seven-year prison sentence, but suspended its execution and placed defendant on formal probation for five years. As a condition of probation, defendant was to "obey all laws."

On March 30, 2018, defendant was arrested for assaulting his girlfriend in her home. Four minutes before the police arrived at the home, the girlfriend had called 911, reporting that "some[one]" was "trying to break" and "kick" in her door; the call also captured the girlfriend telling defendant—using his nickname—to "stop." When the police arrived mere minutes after the call, the girlfriend was "upset," "visibly crying" and "breathing heavily," and "scared to talk." While in this agitated state, she told police that defendant had shown up at her front door, screamed "Bitch, open the door," proceeded to "kick[ in] the door," and then tried to punch her 20 times. The girlfriend's entire statement was captured on a bodycam worn by one of the responding officers. The officers observed that the front door, door frame and doorjamb were "broken" and "pretty trashed," and that the girlfriend had several bruises and a small scratch on her cheek consistent with being in an altercation.

The girlfriend later recanted in part. A few days after the incident, she told a police detective that she had been "mad" and merely "wanted [defendant] out of her house," and that the source of her injuries was a fall she took when she fell backwards after defendant kicked her door open. Nearly a year later, she told the prosecutor that she was "lying about some things."

---

1      All further statutory references are to the Penal Code unless otherwise indicated.

3

## II.    Procedural Background

The People proceeded along two tracks.  First, the People initiated a new prosecution by charging defendant with (1) inflicting corporal injury upon a person in a dating relationship (§ 273.5, subd. (a)), and (2) residential burglary (§ 459).  Second, the People filed a petition alleging that the same conduct constituted a violation of probation in defendant's 2015 case.

The new prosecution was dismissed.  When the girlfriend did not appear for trial despite proper service of a subpoena, the People sought to admit the bodycam video of her statement in lieu of her testimony.  The trial court ruled that the girlfriend's statement on the bodycam video was inadmissible under the Confrontation Clause; the People then announced that they were unable to proceed; and the trial court granted defendant's motion to dismiss.

The probation violation proceeded to an evidentiary hearing.  The trial court ruled that the girlfriend's statements on the first seven minutes of the bodycam video constituted an excited utterance admissible under Evidence Code section 1240.  The court also ruled that a defendant's right to cross-examination in probation violation hearings was governed by due process (rather than the Confrontation Clause), and that the girlfriend's excited utterance constituted "competent evidence that avoids due process concerns."  On the basis of the bodycam video and corroborative testimony of the responding officers, the trial court found defendant in violation of his probation and imposed the previously suspended seven-year prison sentence.

Defendant filed this timely appeal.

4

## DISCUSSION

Citing *People v. Arreola* (1994) 7 Cal.4th 1144 (*Arreola*), defendant argues that the trial court erred in admitting his girlfriend's statement on the bodycam video because the admissibility of that statement under the excited utterance exception is not enough to satisfy due process. Instead, defendant continues, due process *also* requires (1) the People to demonstrate "good cause" by showing that the girlfriend was "legally" "unavailable" or, failing that, that there were other good reasons why she could not be brought into court to testify, *and* (2) the trial court to "balanc[e] the defendant's need for confrontation against" the need to "dispens[e] with confrontation." (*Id.* at pp. 1159-1160.) Although the People contend on appeal that there was "good cause" to admit the girlfriend's statement, the record shows only that the People unsuccessfully sought to secure her presence as she was released from custody on an unrelated matter, and that the People served her with a subpoena that she ignored; this is insufficient to establish "good cause." As a result, this appeal squarely presents the question: Does the admissibility of a hearsay statement under the excited utterance exception satisfy the due process minima applicable in probation revocation hearings, or is a further showing of good cause and a finding that a balance of factors favor admission also required? Answering this question requires us to determine the meaning of the constitutional guarantee of due process, a determination we make independently. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.)

## I. The Standards Governing Probation Revocation Hearings, Generally

When a criminal defendant is placed on probation rather than sentenced to a term of incarceration, a trial court is

5

empowered to revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe . . . that [defendant] has violated any of the conditions of . . . [probation]." (§ 1203.2, subd. (a).) Despite coming after a criminal prosecution, the revocation of probation is itself "not *part* of [the] criminal prosecution." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 480 (*Morrissey*), italics added; *People v. Rodriguez* (1990) 51 Cal.3d 437, 441 (*Rodriguez*); *Stanphill, supra*, 170 Cal.App.4th at p. 72.)

As a result, a defendant facing a probation revocation is not entitled to the """full panoply of rights""" accorded to defendants "in a criminal [trial]." (*Rodriguez*, at p. 441.) The constitutional imperative of proof beyond a reasonable doubt applies at trial, but a violation of probation need only be established by a preponderance of the evidence. (*Id.* at p. 447.) In a similar vein, the Confrontation Clause applies with full force at trial (*Barber v. Page* (1968) 390 U.S. 719, 725 ["The right to confrontation is basically a trial right"]; *Correa v. Superior Court* (2002) 27 Cal.4th 444, 464-465 [same]), but the Clause does not apply at all to probation violation hearings (*People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411; *Liggins, supra*, 53 Cal.App.5th at p. 64).

Absent additional rights conferred by statute or rule, the sole *constitutional* rights applicable to a defendant facing revocation of probation are those found in the "minimum requirements of due process." (*Gagnon, supra*, 411 U.S. at p. 786; *Vickers, supra*, 8 Cal.3d at p. 457.) These minimum requirements entitle a defendant to two hearings—namely, (1) a preliminary revocation hearing and (2) a final revocation hearing. (*Gagnon*, at pp. 782-783, 786; *Vickers*, at p. 460.) And at the final

revocation hearing, due process requires, among other things,[2] "'the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).'" (*Gagnon*, at p. 786; *Black v. Romano* (1985) 471 U.S. 606, 612; *People v. Winson* (1981) 29 Cal.3d 711, 716 (*Winson*); *Vickers*, at p. 457; *Arreola, supra*, 7 Cal.4th at pp. 1147, 1152-1153.)

In *Arreola*, our Supreme Court further elaborated on when a trial court may dispense with the due process-based "right to confront and cross-examine adverse witnesses" at the final probation revocation hearing. Specifically, *Arreola* held that a trial court may admit an out-of-court statement despite the absence of any opportunity to cross-examine the declarant if, "on a case-by-case basis," the court (1) determines there is "good cause" to admit the statement, and (2) "balanc[es] the defendant's need for confrontation against the prosecution's showing of good cause for dispensing with confrontation." (*Arreola, supra*, 7 Cal.4th at p. 1159-1160.) "Good cause" exists "(1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not

---

**2** A criminal defendant also has the right to (1) receive "'written notice of the claimed violations'" of probation, (2) "'disclosure . . . of [the] evidence against him,'" (3) an "'opportunity to be heard in person and to present witnesses and documentary evidence,'" (4) "'a "neutral and detached" hearing body,'" and (5) "'a written statement by the factfinders as to the evidence relied on and [the] reasons for revoking'" probation. (*Gagnon, supra*, 411 U.S. at p. 786.) The defendant is automatically entitled to the assistance of counsel in California (*Vickers, supra*, 8 Cal.3d at pp. 461-462), but only on a case-by-case basis under the federal Constitution (*Gagnon*, at pp. 788-790).

legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm . . . to the declarant." (*Ibid.*) Factors relevant to the defendant's need for confrontation include (1) "the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character)," (2) "the significance of the particular evidence to a factual determination relevant to a finding of [a] violation of probation," and (3) "whether other admissible evidence . . . corroborates" the statement "or whether instead the former testimony constitutes the sole evidence establishing a violation of probation." (*Id.* at p. 1160.)

## II. Analysis

Is the due process-based "right to confront and cross-examine adverse witnesses" at a final probation revocation hearing satisfied when the People establish that an out-of-court statement falls within a firmly rooted hearsay exception, or must the People also show "good cause" to dispense with cross-examination and that this good cause outweighs the defendant's need for confrontation? We conclude that that the applicability of a firmly rooted hearsay exception is sufficient, and we do so for two reasons.

First and foremost, this is the rule most consonant with the purpose and function of due process as a constitutional guarantee. In criminal cases, due process mandates the procedural protections necessary to guarantee "'an accurate determination of innocence or guilt.'" (*Graham v. Collins* (1993) 506 U.S. 461, 478; accord, *Heller v. Doe* (1993) 509 U.S. 312, 332 ["the Due Process Clause" "protect[s]" "the interest of a person

8

subject to governmental action . . . in the accurate determination of the matters before the court"].)  This is why due process mandates that guilt be established beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358, 367.)  And it is why due process mandates the exclusion of unreliable evidence (e.g., *Sexton v. Beaudreaux* (2018) 138 S.Ct. 2555, 2559 ["'[R]eliability [of an eyewitness identification] is the linchpin' of" due process analysis]) and mandates the admission of reliable evidence even when the rules of evidence might not (e.g., *People v. Loker* (2008) 44 Cal.4th 691, 729; *People v. Williams* (2016) 1 Cal.5th 1166, 1190).  Indeed, the purpose of applying due process protections to probation revocation hearings in the first place is to vindicate and protect a criminal defendant's cognizable interest "'in not having [probation] revoked *because of erroneous information* or because of an erroneous evaluation of the need to revoke [probation.]'"  (*Arreola*, *supra*, 7 Cal.4th at p. 1152, quoting *Morrissey*, *supra*, 408 U.S. at p. 484, italics added.)  In sum, due process ensures reliable verdicts by mandating procedures that assure the reliability of the evidence considered by the trier of fact.  Because out-of-court statements that fall within a firmly rooted hearsay exception are, by definition, reliable (*Ohio v. Roberts* (1980) 448 U.S. 56, 66 (*Roberts*), overruled on other grounds by *Crawford*, *supra*, 541 U.S. 36), the fact that a statement falls within such an exception is enough by itself to achieve the purpose and function of the due process guarantees applicable to probation revocation hearings.

Second, a rule that the applicability of a firmly rooted hearsay exception is sufficient to satisfy due process is also most

consonant with California precedent.[3] The cases that hinge admissibility of out-of-court statements upon the existence of good cause and the balancing of that cause against the defendant's interest in confrontation each involved statements that were inadmissible under the rules of evidence. (*Arreola, supra,* 7 Cal.4th at pp. 1160-1161 [preliminary hearing testimony did not fall under former testimony exception to hearsay rule because declarant was never shown to be legally unavailable]; *Winson, supra,* 29 Cal.3d at p. 719 [same]; *People v. Maki* (1985) 39 Cal.3d 707, 709, 713-714 (*Maki*) [documentary evidence did not fall under business records exception to hearsay rule].)[4]

---

[3] The federal courts have adopted a different rule, but that is chiefly because Federal Rule of Criminal Procedure 32.1(b)(2)(C) provides that a person subject to a revocation hearing "is entitled to" "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear," and the Advisory Committee Note to that provision specifies that the court, "when considering the . . . right to cross-examine adverse witnesses," "should" "balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." (Fed. R. Crim. P. 32.1, Adv. Com. Note.) The federal circuit courts have uniformly read this provision to require a showing of good cause and balancing, even though several circuits had previously held that due process was satisfied by the applicability of a firmly rooted hearsay exception. (*United States v. Jones* (10th Cir. 2016) 818 F.3d 1091, 1099-1100; *Curtis v. Chester* (10th Cir. 2010) 626 F.3d 540, 545.)

[4] Thus, the distinction those cases draw between "documentary evidence" and "live testimony" becomes relevant only if no hearsay exception applies. (*Arreola, supra,* 7 Cal.4th at pp. 1152-1153; *Maki, supra,* 39 Cal.3d at p. 709.)

Many of them suggested that the inquiry into good cause and consequent balancing would have been unnecessary had a hearsay exception applied. (E.g., *Maki*, at p. 710 [urging trial courts to "first consider whether" any "pertinent exceptions to the hearsay rule" "applied" before "inquir[ing] as to whether and what flexible [due process] standards may be applied"]; *In re Eddie M.* (2003) 31 Cal.4th 480, 501-502 [so suggesting].) Indeed, reading these cases to mandate an inquiry into "good cause" and balancing when a hearsay exception applied would make no sense. At the time these cases were decided, the Confrontation Clause applicable at trial did not bar the admission of hearsay falling into a firmly rooted hearsay exception and, as to such hearsay, did not require any showing of unavailability of the hearsay declarant. (*Roberts, supra*, 448 U.S. at p. 66; *United States v. Inadi* (1986) 475 U.S. 387, 400 [Clause does not require showing of "unavailability" for coconspirator exception to hearsay rule]; *White v. Illinois* (1992) 502 U.S. 346, 358 (*White*) [same, for excited utterance exception].) If, as defendant suggests, *Arreola* and its kin held that admissibility under a hearsay exception was not enough by itself to satisfy due process, then the standard for admitting hearsay in probation revocation hearings would be more onerous than the standard for admitting hearsay at trial. This has it completely backwards, given that due process is meant to be more flexible than the Confrontation Clause (e.g., *Maki*, at p. 715), not less.

Thus, both the purpose and function of due process generally, as well as the California precedent addressing the issue, strongly suggest that out-of-court statements falling within a firmly rooted hearsay exception are properly admitted at a probation revocation hearing.

11

Of course, *Arreola* and its kin were all decided before *Crawford*, *supra*, 541 U.S. 36. *Crawford* changed the meaning of the Confrontation Clause. The Clause secures "the accused . . . the right . . . to be confronted with the witnesses against him [or her]." (U.S. Const., 6th Amend.) For obvious reasons, the Clause is implicated whenever a court admits an out-of-court declaration for its truth when the declarant is not available for cross-examination. (*Crawford*, at p. 59, fn. 9.) Prior to *Crawford*, the U.S. Supreme Court held in *Roberts*, *supra*, 448 U.S. 56 that the Clause reached *all* out-of-court statements, but conditioned their admissibility on whether they fell into a firmly rooted hearsay exception or bore other "particularized guarantees of trustworthiness." (*Roberts*, at p. 66.) In its 2004 *Crawford* decision, the court jettisoned *Roberts*'s framework and redefined the scope and effect of the Clause. Under *Crawford*, the Clause reaches only "testimonial" statements (that is, those out-of-court statements made for the "'primary purpose'" of "'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution'"), but excludes them unless there was a prior opportunity for cross-examination and unless the declarant is legally unavailable (*Crawford*, at pp. 55-56, 68; *Michigan v. Bryant* (2011) 562 U.S. 344, 356, quoting *Davis v. Washington* (2006) 547 U.S. 813, 822). Does *Crawford*'s redefining of the Confrontation Clause justify a change to the due process-based right of cross-examination applicable during probation revocation hearings?

*Liggins* thought the standard for admitting out-of-court statements under due process was, on some level, tethered to the standard for doing so under the Clause. (*Liggins*, *supra*, 53 Cal.App.5th at p. 68 [finding that the "paradigm shift brought

12

about by *Crawford* is relevant" to the due process analysis applicable during probation revocation hearings].)

We do not.

In redefining the Confrontation Clause, *Crawford* rejected *Roberts*'s view of the Clause. Under *Roberts* and its progeny, the "very mission" of the Clause was "to advance 'the accuracy of the truth-determining process in criminal trials'" (*Tennessee v. Street* (1985) 471 U.S. 409, 415) and to "promot[e] . . . the '"integrity of the factfinding process"'" (*White*, *supra*, 502 U.S. at pp. 356-357, quoting *Coy v. Iowa* (1988) 487 U.S. 1012, 1020). *Roberts* viewed the Clause as adopting a "preference" for cross-examination in service of its mission of achieving accurate and reliable verdicts. (*Roberts*, *supra*, 448 U.S. at p. 63.) In rejecting *Roberts*, *Crawford* construed the Clause as having a different mission— namely, "command[ing], not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." (*Crawford*, *supra*, 541 U.S. at p. 61.) In other words, *Crawford* changed the Clause's marquee from "RELIABILITY featuring Confrontation" to "CONFRONTATION." In changing the focus of the Clause from reliability to confrontation, *Crawford* rendered the Clause less suitable as a screen for reliable evidence. Indeed, the U.S. Supreme Court subsequently declined to declare *Crawford* fully retroactive to cases on collateral review precisely because it was "unclear whether *Crawford*, on the whole, decreased or increased the number of unreliable out-of-court statements that may be admitted in criminal trials" or otherwise "resulted in [a] net improvement in the accuracy of fact finding in criminal cases." (*Whorton v. Bockting* (2007) 549 U.S. 406, 420.) Because due process remains focused on the reliability of evidence and the

13

accuracy of the resulting verdicts, *Crawford*'s shift away from reliability makes it *less* relevant as a bellwether and hence less useful as a tether. (Accord, *United States v. Hall* (9th Cir. 2005) 419 F.3d 980, 985 ["In *Crawford*, the Supreme Court addressed the Sixth Amendment rights of the accused in criminal prosecutions; it did not address the due process rights attendant to post-conviction proceedings for violations of conditions of release"].)

Applying the rule we adopt today, the bodycam video containing the girlfriend's statement was properly admitted. The excited utterance exception to the hearsay rule is a firmly rooted exception. (*White*, *supra*, 502 U.S. at p. 355, fn. 8.) And it is so considered for good reason—namely, because statements made while the declarant is excited are "particularly likely to be truthful" "since [such a] statement is made spontaneously, while under the stress of excitement and with no opportunity to contrive or reflect . . . ." (*People v Hughey* (1987) 194 Cal.App.3d 1383, 1392-1393, italics omitted; *Stanphill*, *supra*, 170 Cal.App.4th at p. 81.) This conclusion does not, as *Liggins* suggests, make an excited utterance "effectively irrebuttable" (*Liggins*, *supra*, 53 Cal.App.5th at p. 69), as the trial court in this case considered the girlfriend's partial recantations and elected to credit her contemporaneous and spontaneous report over her later statements.

**DISPOSITION**

The judgment is affirmed.

**<u>CERTIFIED FOR PUBLICATION</u>.**

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
CHAVEZ